**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF VIRGINIA**

**Norfolk Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 2:24cr29** |
| | ) | |
| **ANDREW KROSS,** | ) | |
| | ) | |
| *Defendant.* | ) | |

**GOVERNMENT'S POSITION WITH RESPECT TO**
**SENTENCING FACTORS IN THE PRESENTENCE REPORT**

COMES NOW the United States of America, by undersigned counsel, and in accordance with Section 6A1.2 of the Sentencing Guidelines and Policy Statements and this Court's policy regarding guidelines sentencing, the government hereby represents that it has reviewed the presentence report (PSR) prepared by the United States Probation Officer. After reviewing the Presentence Investigation Report and applying the factors of Title 18, United States Code, Section 3553(a) to this case, and in accordance with the plea agreement (ECF No. 23), the government's position is that a sentence of thirty (30) years (360 months) of incarceration is appropriate.

**I.      The United States Has No Objection to the PSR**

The United States hereby represents that it has no objections to the facts, the findings or to the calculations of the presentence report. The United States has received no victim impact statements, no requests to address the Court during the sentencing hearing, and no requests for restitution. Should any victim impact statements, requests to address the Court, or restitution requests be received, the government will forward them to the Court and defendant prior to sentencing.

## II.     Motion

The United States moves this Court, pursuant to U.S.S.G. § 3E1.1(b), to grant an additional one-level reduction in the offense level for acceptance of responsibility.   The defendant assisted authorities in the investigation and prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby allowing the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.

## III.    A Sentence of Thirty Years Incarceration Complies with the Factors and Considerations Set Forth in 18 U.S.C. § 3553(a) and (b).

In *United States v. Booker*, 543 U.S. 220, 264 (2005), the Supreme Court made clear that sentencing courts should "consult [the Sentencing] Guidelines and take them into account when sentencing."   *See also United States v. Biheiri*, 356 F.Supp.2d 589, 593 (2005) ("Justice Breyer's majority opinion in [*Booker*] sensibly teaches that the Sentencing Guidelines must still be taken into account pursuant to 18 U.S.C. § 3553(a) in fashioning an appropriate sentence.").   The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "'provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities[.]'"   *Booker,* 543 U.S. at 264 (*quoting* 28 U.S.C. § 991(b)(1)(B)).   The Fourth Circuit has provided the following guidance in the wake of *Booker*:

> A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines.   Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence.

*United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).   Thus, sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a).

Section 3553(a) requires a sentencing court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence

imposed to: reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Applying these sentencing factors to the facts of this case demonstrates that a sentence of thirty years of incarceration is appropriate and reasonable.

### A.    Nature and Circumstances of the Offense

The circumstances of this case are grim. Beginning in at least April of 2023, the defendant engaged in online conduct that can only be described as reprehensible. Using teen chat websites, the defendant targeted female teens between the ages of 14 to 16 years old and convinced them to create and provide him with child sex abuse materials for his own benefit. The defendant befriended these teens by pretending to be a 19-year-old teen himself as he gained their trust through chatting, and then eventually turned their conversations to sex. He encouraged his victims to insert objects into their vaginas and anuses, items such as sharpies and brush handles. When they complied with these requests, defendant demanded they take pictures and videos of these acts and send them to him using various social media apps. The defendant sent pictures to these minors of his own genitalia and would send them voice messages. He asked the minor victims to regularly refer to him as "Daddy" while he verbally degraded them by calling them "sluts" and encouraging them to show him more of their bodies and to perform sexual acts with objects and sex toys.

Defendant was discovered after a parent discovered his chats with her minor daughter and contacted the Columbia, Missouri police department. A detective reviewed the chats and opened an investigation into defendant's online persona, "Letsfishh#5008." Defendant demanded that this victim call him "Daddy" and that he wanted to "train" both of her "holes". He further stated

3

he wanted to "bend [her] over and eat [her] pussy and ass from the back" and to overcome her reluctance to send him pictures, defendant stated she needed to "obey [her] daddy."   Defendant asked his she was going to be a good "slut" and let him see her body and then indicated he would love to visit this victim in real life if she could get away a little bit.   Defendant indicated that he would tell her if he had any upcoming jobs in St. Louis.   Defendant told this victim, "I wish I was there right now so you could suck my cock and would you lick my ass too?"

Most egregious, defendant encouraged one particular victim to engage in sex acts with her dog and film them for him.   Below is the transcript between victim "Princess xxxx" as identified in the indictment, and defendant's online persona, "letsfish #5008" in which defendant directed the victim to engage in sexual activity with her dog and record it for his pleasure:

| letsfishh#5008 | Or what about letting your dog lick your pussy would you ever try that? |
| --- | --- |
| Princess xxxx | Maybe |
| letsfishh#5008 | Hehe I think you totally should try it right now baby |
| Princess xxxx | Try what |
| letsfishh#5008 | To let your dog lick your pussy |
| letsfishh#5008 | That way you get to just relax and enjoy the pleasure |
| Princess xxxx | Ok daddy |
| letsfishh#5008 | Good girl can daddy see? |
| Princess xxxx | Idk |
| letsfishh#5008 | Please baby |
| letsfishh#5008 | It'll be ok |
| Princess xxxx | Why daddy |
| Princess xxxx | Idk |
| letsfishh#5008 | Because I think it would be hot to see don't worry it won't go anywhere |
| Princess xxxx | Idk daddy |
| letsfishh#5008 | Is she already doing it? |
| Princess xxxx | Yes daddy |
| letsfishh#5008 | Mmmmm fuck that's so hot |
| letsfishh#5008 | Please baby girl |
| letsfishh#5008 | You're making daddy beg |
| Princess xxxx | It feels really good daddy |
| letsfishh#5008 | I told you so princess |
| letsfishh#5008 | Is this the first time you've had her do it? |

4

During the course of this investigation, at least five known confirmed victims have been identified in Texas, Alabama, Missouri, North Carolina, New York, and potentially two more victims in the United Kingdom. This does not include the numerous other similar chats that defendant engaged in where the user on the other end was unable to be identified. These victims have expressed embarrassment and shame as a result of the defendant's manipulations. They have no desire to participate further with these proceedings and simply wish to get on with their lives. Regardless, they will always have to live with the defendant's actions in this case.

Another aspect of the defendant's conduct is the repetitive nature with which he engaged these children. This was not a single lapse of judgment, nor was it limited to a single victim.

This defendant sought out and preyed on young children. He used their naivete and inexperience against them to gratify his own sexual desires. He groomed them, convinced them to call him "Daddy" to exercise dominion and control over them, and finally degraded them verbally and by directing them to perform and record sex acts primarily suited to satisfy his sexual proclivities. This was not an isolated incident. It was not a one-time lapse in judgment. And it was no accident. Rather it was meticulously choreographed behavior designed to find, meet, chat with, and sexually exploit minor children. Perhaps more chilling is defendant's "good-guy" persona to his wife, family, church, and friends, while the real defendant stalked the internet searching for more minor victims.

B.      Characteristics and History of the Defendant

The defendant has no criminal history whatsoever. His educational and employment records also indicate that he is intelligent and hard working. He is an honorably discharged U.S. Navy veteran and has worked as a systems engineer for the Boeing Company. He is in good physical health, possibly suffers from Post Traumatic Stress Disorder, and abuse as a child. But overall he has lived a fortunate life with a supportive family and a productive career. The defendant pled guilty in a timely fashion and received a full three points for acceptance of responsibility.

The amount of support shown to this defendant by his family is extraordinary. The United States has reviewed the letters filed on his behalf in support of his sentencing and it is clear that they love and support him unconditionally. However, the United States also notes that most of the letters do not address the crime that brings the defendant before the Court. At least one letter seems to indicate the defendant's conduct was a lapse in judgment and references "a single choice, a misguided decision, a rash impulse…" ECF No. 33-1 at 6. Such characterization causes the government to question whether the defendant has been fully honest

6

in disclosing the full scope of his criminality to his family members because nothing about the defendant's conduct was rash or impulsive.   And if the defendant is not fully honest about his conduct, it begs the question whether he has truly accepted responsibility for his conduct and whether he is fully committed to receive the treatment he will need to rehabilitate himself so that he is no longer a danger to children.

### C.       Need to Deter Future Criminal Conduct and to Protect the Public

The defendant's sentence needs to accomplish the twin goals of deterring the defendant from engaging in future criminal conduct and to protect the public.   The government has reviewed the Psychosexual evaluation submitted by the defendant and understands that Dr. DeRight will not be present at the sentencing hearing.   While the defendant can submit the report on its own, the United States asserts that the Court should give Dr. DeRight's conclusions less weight as they will not be subject to the crucible of cross-examination.   Nonetheless, while Dr. DeRight concludes that the relative recidivism risk low, the United States questions certain aspects of the report.   For instance, is simply watching videos of bombs being dropped enough to trigger Post Traumatic Stress Disorder?   And if it is, how does such a diagnosis relate to the conviction at bar?   *See* Def't's Sealed Ex. A at 5-6 ("[I]t is likely that [defendant's] actions in the instant offense stemmed from a combination of reenactment of childhood trauma and exacerbation of PTSD related to prior military experience.").   This and other conclusions present in the report deserve more scrutiny and Dr. DeRight's absence should cause the Court to view this report with a skeptical eye.

Further, the risk that the defendant and offenders like him pose to society support a significant sentence of imprisonment.   This defendant, in particular, poses a tremendous risk that he will re-offend because of the sheer magnitude and depravity of his offenses.   A lengthy sentence is therefore required to protect the public and deter him from considering the possibility

of engaging in future misconduct once released from incarceration.

### D.   Need to Provide Treatment to the Defendant

Due to the nature of the defendant's crimes, the defendant should be ordered to participate in a sex offender treatment program while incarcerated and be placed on a long period of supervised release upon the conclusion of his incarceration to ensure he continues to receive treatment while released.

### E.   Other Relevant Factors

Section 3553(a) also addresses other the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, to afford adequate deterrence to criminal conduct, and to prevent unwarranted sentencing disparities.  The defendant's guideline calculation is capped by statute at thirty years.  Any sentence below that would be rewarding a defendant for seeking out children online for the purpose of producing child pornography.   And while the sentencing guidelines may not be perfect in child exploitation cases, they are the tool that Congress and the Sentencing Commission have provided the Court to prevent unwarranted sentencing disparities.   The way to prevent unwarranted sentencing disparities is by selecting sentences within the sentencing guidelines unless there is a compelling reason to not do so.  The defendant's acceptance of responsibility is factored for in the guidelines and there is nothing else in the record before the Court that merits a variance sentence.  Certainly, the defendant has expended considerable resources in compiling cases that at least appear similar on their face to the case of this defendant.  But the problem with compiling a list of cherry-picked cases is that there are normally just as many cases in which a similarly situated defendant received a statutory maximum or sentence reflecting an upward variance.  *See e.g. United States v. Hoover*, 95 F.4th 763, 769 (4th Cir. 2024), cert. denied, No. 24-5497, 2024 WL 4486496 (U.S. Oct. 15, 2024) (affirming a 70-year sentence for a defendant who filmed a 17- and 12-year-old boy

masturbating after the court acknowledged several potential mitigating factors, including Hoover's good employment record, military service, and possible PTSD.); *United States v. Ranger*, 827 F. App'x 271, 272 (4th Cir. 2020) (affirming a 480-month sentence that represented a downward variance from the sentencing guidelines for two counts of production of child pornography.); *United States v. Williams*, 5 F.4th 500, 504 (4th Cir. 2021) (affirming the district court's upward variance sentence of 327 months of incarceration for child pornography production where the court focused on the egregious nature of the offense and the sexual exploitation of a child for 2 years.). Each case must stand and fall on its own merits. The facts of this case are egregious. A thirty-year sentence would adequately address these concerns.

## IV.     Conclusion

For these reasons, as well as additional reasons to be more fully articulated during the sentencing hearing on this matter, the United States respectfully requests that the Court sentence the defendant to a term of thirty (30) years of confinement.

Jessica D. Aber
United States Attorney

By       /s/
Joseph L. Kosky
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number (757) 441-6331
Facsimile Number (757) 441-6689
E-Mail Address - joseph.kosky@usdoj.gov

9